THOMAS E. LAWRENCE, Appellant, *v.* GUSTAVE A. SCHAEFER, Respondent.

*Fire insurance, Lloyds system — an action must be brought against the attorney of the underwriters alone — actions cannot be brought, in the first instance, against all the underwriters.*

A stipulation, contained in a fire insurance policy issued under the Lloyds system, providing that no action shall be brought to enforce the policy except against the attorney of all the underwriters, himself one of them, they agreeing to abide the result of such single action as fixing their individual responsibility, is valid, and several actions cannot be brought upon the policy, in the first instance, against the several underwriters individually.

Such a provision does not oust the court of jurisdiction, and is in avoidance of a multiplicity of actions, the merits of any controversy in reference to the policy being finally determined as to all the underwriters in such action against the attorney.

APPEAL by the plaintiff, Thomas E. Lawrence, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Erie on the 13th day of January, 1897, upon the decision of the court rendered after a trial at the Erie Trial Term before the court without a jury.

Action upon a Lloyds insurance policy bearing the name of twenty-five underwriters, executed by C. Hagen, as attorney in

fact, for the twenty-four underwriters, and by himself as one of the twenty-five.

The policy provided, among other things, viz. : " No action shall be brought to enforce the provisions of this policy, except against the attorney, and representing all, of the underwriters, and each of the underwriters hereby agrees to abide the result of any suit so brought as fixing his individual responsibility hereunder. Judgment entered in such an action shall be satisfied out of the unexpended premiums in the hands of the underwriters. If such premiums shall be insufficient, then out of the deposit made by the several underwriters, as hereinbefore expressed and limited; but in no case shall the judgment bind the property of the said attorney to a greater extent than his liability as an individual underwriter."

A loss occurred and was adjusted and apportioned, and proofs of loss were furnished to the company " and the proportionate liability of each underwriter is the sum of $83.46."

The court found as a fact, viz. : " That no suit has been brought against Hagen as attorney.

" That each underwriter has been separately sued on this policy, and twenty-five actions are now pending, including one against said Hagen, as one of said underwriters." The cause of action was duly assigned to the plaintiff.

The court found as conclusions of law, viz. : " I find and decide that before any action can be maintained against the underwriters, individually, to recover upon said policy and to assert any liability against them as individuals, their attorney in fact must first be sued, as stipulated in said policy.

" 2. That the clauses in said policy, hereinbefore recited, requiring actions for the enforcement of said policy to be commenced primarily against the said attorney, C. Hagen, are valid, and compose part of the contract between the underwriters and the assured."

Upon such conclusions of law the complaint was dismissed, with costs.

The trial judge, in an opinion, correctly stated the facts and elaborately discussed the questions of law.

*George S. Hull* and *Sidney W. Petrie,* for the appellant.

*A. J. Robertson,* for the respondent.

PER CURIAM:

The conclusion stated in the findings and opinion of SPRING, J., seem to be sustained by *Leiter* v. *Beecher* (2 App. Div. 577) and *New Jersey & Pennsylvania Concentrating Works* v. *Ackermann* (6 id. 540).

The attorney, C. Hagen, was also an underwriter, and, hence, the case differs from *Farjeon* v. *Fogg* (16 Misc. Rep. 220).

The logic of the *Leiter* case seems to indicate that the restrictive language used in the policy is not void as against public policy ; and the opinion delivered by SPRING, J.,* applies the doctrine of that case, as well as the case of *Concentrating Works* v. *Ackermann* (*supra*), to the questions here presented, and sustains the conclusion reached by the trial judge.

If the foregoing views are correct, the judgment entered thereon should be sustained.

All concurred, except HARDIN, P. J., not voting, and FOLLETT, J., not sitting.

Judgment affirmed, with costs.

---

* The following is the opinion of SPRING, J., at Special Term:

SPRING, J.:

This action was tried without a jury, and involves the question of the right of the insured in a Lloyds policy to sue each of the underwriters to recover for a loss within the terms of the policy.

The policy in suit was issued by twenty-five underwriters, and is signed, not by them personally, but by C. Hagen, their attorney. By the terms of the policy, the personal liability of each underwriter is limited to $200 in the event of loss, and is individual and several. Then occur the following clauses which comprise the nub of the controversy in this action:

"No action shall be brought to enforce the provisions of this policy, except against the attorney and representing all of the underwriters, and each of the underwriters hereby agrees to abide the result of any suit so brought, as fixing his individual responsibility hereunder." It is further provided that judgment shall be first satisfied out of the unexpended premiums in the hands of the underwriters, and if necessary "then out of the individual liability of the several underwriters, as hereinbefore expressed and limited; but in no case shall the judgment bind the property of the said attorney to a greater extent than his liability as an individual underwriter."

A loss occurred under the policy in question, and it has been adjusted and twenty-five separate actions have been brought, one against each underwriter, and the attorney in fact, as such, has not been sued.

ALBERT L. KNAPP, Respondent, *v.* JAMES MURPHY, Appellant.

*A judgment for the plaintiff in an action of conversion — when it is reversed, with costs, upon an appeal, the defendant is entitled to an execution against the person of the plaintiff.*

A complaint in an action which alleges that, after the defendant had assigned to, and agreed to collect for, the plaintiff a sum due the defendant from a corporation, he wrongfully collected it and converted it to his own use, states a cause of action justifying an order of arrest under subdivision 2 of section 2895 of the Code of Civil Procedure, and the issue of an execution against the person of the defendant upon any judgment recovered therein; and where such a judgment in favor of the plaintiff is reversed upon an appeal, with costs, the defendant is entitled to issue upon the judgment for costs an execution against the person of the plaintiff.

APPEAL by the defendant, James Murphy, from an order of the Supreme Court, made at the Monroe Special Term and entered in the office of the clerk of the county of Ontario on the 8th day of February, 1897, setting aside an execution issued against the person of the plaintiff to the sheriff of Ontario county.

The primary question is as to the validity of the clause in the policy requiring the attorney to be sued as representing all the underwriters.

The policy in controversy is a contract between the insured and the insurers, and its stipulations and agreements will be given full force and effect unless they contravene some constitutional provision or are repugnant to public policy. The purpose of the requirement was obviously to prevent a multiplicity of actions, and in case there was a defense to be interposed, to have it fought out in one action. The aim or design is as important for the insured as for the underwriters. To compel the insured to begin twenty-five separate actions, each for a small sum, and against defendants widely scattered, and possibly in a Justice's Court, and with the privilege to the defendant to litigate the merits in each case, would impose upon the insured an expensive and difficult mode of realizing for his loss and with much uncertainty, for he might succeed in some cases and be defeated in others. And the underwriters would likewise be subjected to the burden of a contest in each case with great liability as to costs. So the provision is a prudent and desirable one for all concerned to have the merits of the controversy determined in one action.

The enforcement of this provision does not oust the courts of jurisdiction. It simply is a stipulation on the part of all the underwriters with the assured, that in the event payment is not made conformably to the terms of the policy, the insured may bring an action against Hagen, one of the underwriters, and that action will be decisive in determining the plaintiff's right to recover. That infringes upon no constitutional provision. One fair trial on the merits before a

*Ellis & Griffith,* for the appellant.

*Henry M. Field,* for the respondent.

HARDIN, P. J. :

On the 31st day of October, 1895, Knapp, the plaintiff and respondent, brought an action in Justice's Court in Ontario county, before A. DUNHAM, Esq., a justice of the peace, and lodged with the justice of the peace a written complaint containing the following words: "That on or about the 19th day of June, 1895, the said defendant, for value received, made, executed and delivered to the plaintiff an assignment and transfer of certain moneys that he was to receive from the Lehigh Valley Railroad Company, and thereby agreed to become the agent of the plaintiff for the collection of the said moneys, and immediately upon the collection of the same, on or about the 18th day of July, 1895, to pay the same over to the said plaintiff, free of all charge or expense. That on or about the 18th day of July, 1895, the said defendant collected and received the sum of $35.00 from the Lehigh Valley Railroad Company, which

jury can be had. So the plaintiff gets an adjudication and the underwriters have their day in court. The attorney represents them as an executor or administrator represents the next of kin. The mode of ascertaining the rights of parties is often made the subject of stipulation. As was said *In re N. Y., L. & W. R. R. Co.* (98 N. Y. 447–453), "and generally all stipulations made by parties for the government of their conduct, or the control of their rights, in the trial of a cause, or the conduct of a litigation, are enforced by the courts." The counsel for the defendant argues that there is no way of enforcing the judgment after one is recovered.

Possibly suit may be necessary, but the merits cannot be retried. The stipulation must be taken *in toto,* and by it the underwriters expressly agree to abide the result of any action brought against the attorney, so that another suit would simply be a step in the procedure to enforce judgment like proceedings supplemental to execution, or any other remedy designed to insure or aid in the collection of a judgment. In full liability corporations resort must first be had to the corporate assets, and in case of failure to realize out of these, then the members of the corporation become liable, but it has never been regarded in contravention of public policy that the creditor must first proceed against the body corporate. Perhaps the more troublesome question is, even assuming the insured can proceed against the attorney, does that restriction absolutely inhibit suing the individual underwriters in separate actions? If force is to be given to the restrictive clause at all, it must be with the intent of carrying out the design of the parties to the insurance contract. Their agreement is that no action shall be

was the money of this plaintiff. That this plaintiff immediately thereafter, and frequently since, has demanded the said moneys of the said defendant, and he has neglected and refused to deliver the same to this plaintiff. *That the said defendant has unlawfully and wrongfully converted the said sum of* $35.00, *the property of this plaintiff,* to his own use."

The summons was returnable on the 11th of November, 1895, and on that day the plaintiff appeared. The defendant did not appear. The plaintiff submitted the case " on his verified complaint," after proof that the interest amounted to seventy cents. The justice thereupon rendered a judgment for thirty-five dollars and seventy cents damages, and one dollar and ninety cents costs, and on that day issued an execution against the defendant, and delivered the same to the plaintiff, which was returned unsatisfied December 30, 1895.

In the affidavit of Mr. Griffith it is stated that the plaintiff was present before the justice when the judgment was rendered " and demanded the issuing of a body execution, and took the same himself to a constable of the said town of Manchester."

brought to enforce the provisions of the policy except against the attorney, and no casuistry can construe this stipulation into meaning that twenty-five actions can be brought to enforce the provisions of the policy. That was the very annoyance both parties were seeking to avoid, and as its foundation lies in a purpose to adjust their rights in court without a multiplicity of actions, the courts should fairly endeavor to make effective this object. Of course, if the scheme designed that no redress could be had against the underwriters, that the action against the attorney ends any attempt by legal proceeding to enforce the claim against the personal liability of the underwriters, then the provision would be nugatory and against public policy. It would then be a mere jumble of words to permit the underwriters to assume ostensibly a liability incapable of enforcement. But in construing this provision, as in every other, we must give a fair interpretation to the intent of the contracting parties. The scheme of insurance evidently contemplated there would be a general fund on hand to meet losses, and the personal liability of the underwriters was only to be available when the judgment could not be made out of the fund, so that it is again akin to the liability of stockholders of a full liability corporation. The underwriters contract to pay after their liability has been established in the manner provided, and after collection from the designated fund cannot be made. The inhibition against suing the underwriters is not absolutely unqualified, but "no action to enforce the provisions of the policy" is maintainable against the underwriters for that must be against the attorney; that is, the merits of any controversy that may arise within the compass of the contract must be determined in that action, and

An appeal was taken from the justice's judgment to the County Court of Ontario county, and the judgment was reversed by the County Court, and thereupon a judgment was entered in favor of the defendant for thirty-five dollars and twenty-five cents costs in the Ontario county clerk's office.

On the 23d of November, 1896, an execution was issued against the property of Knapp, the plaintiff, and delivered to the sheriff of the county of Ontario, and by him returned unsatisfied on the 16th of December, 1896, and on the 18th of December, 1896, an execution against the person of Knapp was issued to the sheriff of Ontario county, and Knapp " was duly arrested and taken into custody thereunder on the 29th day of December, 1896, by Lyman H. Aldrich, a deputy sheriff of Ontario county."

Whether the County Court properly reversed the justice's judgment is not a question to be considered on this appeal.

The gravamen of the plaintiff's complaint seems to be for a conversion of a sum of money, which the plaintiff alleges he had demanded of the defendant, and after such allegation made in the complaint, the plaintiff further alleges, viz. : " That the said defendant

---

the stipulation of the underwriters to abide thereby cuts off any further litigation as.to the provisions of the policy, and thereafter whatever proceedings are carried on are merely with a view of collecting the judgment. The clause is reasonably susceptible to this construction, and it has the merit of fairly spelling out the purpose of the parties to it.

It seems to me that Hagen is not merely an agent or attorney in his contractual relations with the insured. He is one of the underwriters, and in this particular the case may be distinguishable from the celebrated case of *Knorr* v. *Bates* (14 Misc. Rep. 501). He is the particular underwriter who is designated in the policy to bear the brunt of any litigation that may arise to enforce the provisions of the policy, and his ultimate liability is like that of his associates.

These Lloyds policies have grown into extensive use recently, and clauses of like purport to the one here in controversy have been several times the subject of judicial construction, but unfortunately without unanimity of opinion.

In *Knorr* v. *Bates* (13 Misc. Rep. 395; 24 Civ. Proc. Rep. 377; affd., 14 Misc. Rep. 501) the clause was almost identical with the one in suit, and the only distinction seems to be that in that case the attorney was not an underwriter, and the reasoning both of the judge at Special Term and of Judge Pryor lays considerable stress upon the fact that the attorney was not a party to the contract. In that case the clause was held to be invalid. This has been followed in the City Court of New York. (See *Ralli* v. *Hillyer*, 15 Misc. Rep. 692.) And in case of *Farjeon* v. *Fogg* (16 id. 219), Judge Truax, in the Special Term of the Supreme Court, decided a similar clause to be invalid, putting his conclusion

has unlawfully and wrongfully converted the said sum of $35.00, the property of this plaintiff, to his own use."

Upon recovery by the plaintiff under such a complaint, he was entitled to issue a body execution. Indeed, such seems to have been the construction of his complaint by him when he held a judgment against the defendant.

In subdivision 2 of section 2895 of the Code, which provides for an order of arrest, it is specified that where the recovery is for " an injury to property, including the wrongful taking, detention or conversion of personal property," an order of arrest may be granted.

In *Babcock* v. *Smith* (19 N. Y. Supp. 817) it was held that the section from which the quotation has been made, that where the cause of action is for the wrongful conversion of personal property, the same is one of the sections specified in subdivision 2, section 2895 of the Code of Civil Procedure.

Under a complaint somewhat similar to the one before us, it was held in *Farrelly* v. *Hubbard* (148 N. Y. 592) that it authorized the issuing of a body execution. In the course of the opinion delivered it was stated : " As already stated, the action in Justice's Court was

squarely upon the ground that the stipulation required the action to be brought against a person not a party to the contract, and the provision was, therefore, void as inimical to public policy.

In *Leiter* v. *Beecher* (2 App. Div. 577) and in *New Jersey & Penn. Concentrating Works* v. *Ackermann et al.* (6 id. 540) the Appellate Division of the first department decided similar clauses to be valid, although an endeavor was made to distinguish those cases from *Knorr* v. *Bates* (*supra*).

The contention pressed by the counsel for the plaintiff, that the twelve months' limitation in which actions must be commenced would operate to prevent the insured recovering against the underwriters at all, is not applicable to this case, as was well said in the case last cited. The limitation has reference solely to the action against the attorney in fact, and not to any proceeding to enforce an established judgment.

Again, it occurs to me that Hagen is a trustee of an express trust within the purview of section 449 of the Code of Civil Procedure. The contract was made with him, and, so far as the other underwriters are concerned, for their benefit. While that section, on its face, is in terms permissive in allowing actions to be prosecuted, yet a similar provision of the Code was held to warrant suits to be maintained against the trustees. (*Mead* v. *Mitchell*, 5 Abb. 92–106; affd., 17 N. Y. 210.)

That is the general doctrine, that an executor, administrator or person expressly authorized by statute to sue can be prosecuted by action in pursuance of the same authority that accords him the privilege of invoking the aid of the courts.

The complaint must be dismissed, with costs. Ordered accordingly.